**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA

v.                                                        No. 3:14-cr-00085 (JAM)

CARLOS COLON, *et al.*

**RULING ON DEFENDANTS' MOTIONS**
**TO SUPPRESS STATEMENTS MADE IN POLICE CARS**

One day last April, law enforcement agents in this case arrested the seven defendants at a

parking lot in Stamford, Connecticut on federal robbery and drug trafficking conspiracy charges.

Immediately following the arrests, each of the defendants was promptly secured in the back seats

of three unmarked police cars that were on the scene. While law enforcement officers continued

to collect evidence from the scene of the arrest, defendants remained alone in the police vehicles,

and they talked to themselves and with each other for the next half-hour or so. This was just as

law enforcement agents had hoped. They had installed concealed video cameras somewhere

around the dashboard area of each police car to record all that the unsuspecting defendants said,

including many highly incriminating statements.

Defendants now seek suppression of these statements. First, they contend that they had a

reasonable expectation of privacy, and therefore that the warrantless recording of their words and

conversations was a violation of the Fourth Amendment. Second, they contend that their

conversations were a product of custodial interrogation, and therefore that they are inadmissible

at trial because the defendants had not received their *Miranda* warnings and waived their

*Miranda* rights. For the reasons set forth below, I deny their motions to suppress.

1

## BACKGROUND

The seven criminal defendants in this case fell victim to a government "sting" operation in which they plotted to rob a fictional drug "stash house" in Connecticut.[1] All seven defendants—some of them armed—gathered one day last April at a parking lot somewhere in Stamford, expecting that they would momentarily proceed to a nearby stash house to rob and help themselves to 15 kilograms or more of lightly guarded cocaine. Instead, a flood of law enforcement agents swept in suddenly to arrest them.

Immediately upon arrest, each defendant was handcuffed and placed by agents in one of three unmarked police cars: defendants Carlos "Joel" Colon, Markus Mendez, and Hiram Mojica were placed in a silver Chevrolet Tahoe; defendants Nelson Diaz and Humberto Soto were placed in a silver Chevrolet Impala; and defendants Carlos "Camby" Colon, Trevor Pierce, and for a time also Joel Colon were placed in a white Ford Crown Victoria. Each of the handcuffed defendants was placed in the back seat of one of the cars and secured with a seatbelt. Officers told each of the defendants that they were being put in a police car and that they should not spit in it.

What none of the defendants knew was that the arresting officers had planted a hidden video camera with audio capability somewhere around the dashboard area of each of the cars. The government has declined to disclose precisely how the cameras in each of the cars were concealed, but it acknowledges that the cameras were concealed in a manner so that defendants would not know they were being recorded. At least one vehicle, the Impala, had no visible police electronics. The Tahoe and the Crown Victoria each had a single police radio that may or may not have been visible to defendants from the backseat. And the Tahoe also had a civilian SIRIUS

---

[1] By separate written ruling issued today, I have denied defendants' motion to dismiss the indictment on grounds of outrageous government conduct.

XM radio receiver on the dashboard, which may or may not have been visible to defendants from the backseat.

Inside each of the cars, defendants spoke to themselves or to each other while they waited for somewhere between thirty and sixty minutes to be transferred to a police paddy wagon and transported from the scene. Outside the cars, law enforcement agents conducted searches of the cars that defendants had driven to the parking lot, and the agents otherwise milled around and secured the arrest scene. Apart from a few brief interruptions, defendants were left alone in the police cars and with the doors closed; one of the cars had a door open for a while, but there is no evidence that any defendant thought the police could overhear the conversations they had among themselves.

The government did not have a warrant to install or use electronic recording equipment in the police cars to listen in on suspects' conversations. Nor had the defendants received their *Miranda* warnings and waived their *Miranda* rights.

## DISCUSSION

Defendants seek suppression of their statements on two grounds. First, they claim that the audio and video recording of their statements was a violation of the Fourth Amendment, because the warrantless recording of their conversations intruded upon a reasonable expectation of privacy they had while left alone inside the police cars.[2] Second, defendants contend that the secret recording of their conversations amounted to custodial interrogation in violation of their *Miranda* rights.

---

[2] Defendants also claim that the police's warrantless recording of their conversations in the back of the police cars was a violation of the federal wiretap law, Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq*. It is undisputed that defendants must have a reasonable expectation of privacy under the Fourth Amendment in order to have standing to claim a violation of the federal wiretap law. *See, e.g.,United States v. Balon*, 384 F.3d 38, 44 (2d Cir. 2004); 18 U.S.C. § 2510(2). Accordingly, defendants' Title III claim rises or falls with their Fourth Amendment claim, and—absent a finding that defendants had a reasonable expectation of privacy—there is no need for me to address this argument separately.

### Fourth Amendment Privacy Claim

The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Its protection has long been understood to require the government to obtain a warrant before eavesdropping on a suspect's words or conversations, but to apply only if a suspect has a reasonable expectation of privacy in not having his words or conversation overheard. *See Katz v. United States*, 389 U.S. 347 (1967) (suspect had reasonable expectation of privacy from electronic eavesdropping of telephone call made in public telephone booth); *United States v. Mankani*, 738 F.2d 538, 542–45 (1984) (suspect had no reasonable expectation of privacy from police eavesdropping on suspect's conversation through hole in wall from adjoining hotel room).[3]

In order to show that they had a reasonable expectation of privacy while seated in the rear of the police cars in this case, defendants must show both that they exhibited an expectation of privacy and that their subjective expectation of privacy was one that society is prepared to accept as reasonable under the circumstances. *See, e.g., United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013); *see also Katz*, 389 U.S. at 361 (Harlan, J., concurring). A finding that an expectation of privacy is reasonable "recognizes the everyday expectations of privacy that we all share." *Minnesota v. Olson*, 495 U.S. 91, 98 (1990).

The government does not seriously contest defendants' claims that they subjectively exhibited and expected privacy from the police overhearing their words while sitting alone in the back of the police cars. The only question, therefore, is whether defendants' expectation is one

---

[3] Even in the absence of an expectation of privacy, a Fourth Amendment "search" may occur if the government commits a predicate trespass upon a suspect's person, house papers, or effects for the purpose of acquiring information. *See, e.g., United States v. Ganias*, 755 F.3d 125, 133 (2d Cir. 2014). Here, however, defendants do not allege any such trespass and rely instead solely on an assertion of an expectation of privacy. Nor do defendants make any claim of an unlawful Fourth Amendment "seizure" as a basis for suppression.

that society is prepared to accept as reasonable.

Although the Second Circuit has yet to address this issue, every other federal appeals court to consider it has concluded that a criminal suspect or arrestee does not have a reasonable expectation of privacy from having his conversations secretly monitored and recorded while voluntarily present or detained in a police car. *See United States v. Fridie*, 442 F. App'x. 839, 841 (4th Cir. 2011) (*per curiam*); *United States v. Hernandez-Mendoza*, 600 F.3d 971, 977 (8th Cir. 2010), *opinion amended on denial of reh'g*, 611 F.3d 418 (8th Cir. 2010); *United States v. Dunbar*, 553 F.3d 48, 57 (1st Cir. 2009); *United States v. Turner*, 209 F.3d 1198, 1200–1201 (10th Cir. 2000); *United States v. Carter*, 117 F.3d 1418 (5th Cir. 1997) (*per curiam*); *United States v. Clark*, 22 F.3d 799, 801–02 (8th Cir. 1994); *United States v. McKinnon*, 985 F.2d 525, 528 (11th Cir. 1993); *see also United States v. Fabian*, 2005 WL 2043008, at *2, *report and recommendation adopted*, 2005 WL 2205899 (D. Vt. 2005).

Some of these courts have elaborated on why an expectation of privacy for what defendants might say in a police car is not reasonable. In *Clark*, for example, the Eighth Circuit found that a police car was "essentially the trooper's office," because it "is frequently used as a temporary jail for housing and transporting arrestees and suspects," and that, because police transport vehicles were used in investigation "for the express purpose of ferreting out crime," there was no reasonable expectation of privacy. *Clark*, 22 F.3d at 801–02. In *Turner*, the Tenth Circuit found that, even if the officer "deliberately represented the car as a safe haven," the defendant's subjective expectation of privacy was not reasonable under the circumstances, because "the practical realities of the situation should be apparent to occupants," as "[p]atrol cars bristle with electronics, including microphones to a dispatcher, possible video recording with audio pickup, and other electronic and recording devices." *Turner*, 209 F.3d at 1200–01

5

(footnote omitted).

Defendants strive to distinguish these decisions on grounds that this case involves neither marked police cars nor vehicles that were "bristling" with electronics on the inside. They rely on two recent decisions from the Northern District of Illinois that recognize an expectation of privacy against secret tape recording of arrestees while they were in the rear compartment of a police paddy wagon; the compartment was out of earshot of the driver's compartment, and there was no electronic equipment in plain sight. *See United States v. Paxton*, 2014 WL 3807965, at *2 (N.D. Ill. 2014); *United States v. Williams*, 15 F. Supp. 3d 821, 2014 WL 642813, at *4–6 (N.D. Ill. 2014).

I reject defendants' arguments and find both *Paxton* and *Williams* to be unpersuasive. The reasonableness of an expectation of privacy should not depend on how a police car is marked or painted on the outside. Nor should the reasonableness of an expectation of privacy turn on whether a police vehicle is decked out on the inside with radios, scanners, or other gadgets and electronics. The police might just as easily hide a video camera or tape-recorder in a hat or a soda can on the dashboard as in a dashboard-mounted radio or GPS location device. A suspect is no more or less on notice of the likelihood that he may be subject to recording because of the random presence of electronics that give no indication that they are being used to record conversations.[4]

What matters to the expectation of privacy is not what a police car looks like inside or outside but that a suspect *knows* he is inside a police car. It is not reasonable for a suspect to believe that the inside of a police car has been reserved—like the telephone booth in *Katz*—for

---

[4] Indeed, as technology provides for smaller and smaller hidden cameras, the connection between visible electronics and notice of surveillance becomes less and less sensible. *See, e.g.*, Rachel Metz, *Lens-Free Camera Sees Things Differently: An Itty-Bitty Camera Could Bring Sight to the Internet of Things*, MIT TECHNOLOGY REVIEW (Mar. 27, 2014), http://www.technologyreview.com/news/525731/lens-free-camera-sees-things-differently/.

his benefit as a temporary sanctum for private conversations. Society would not be prepared to accept as reasonable an expectation of privacy for suspects who find themselves seated alone or with others inside a vehicle they know to be owned by the police.

I have no reason in this case to consider whether a different conclusion would result if a suspect did not know the vehicle to be owned or controlled by the police or if the suspect were promised by the police that his words were *not* being recorded. Because defendants here had no reasonable expectation of privacy for their conversations in the police cars, I will deny their motion to suppress insofar as it relies on the Fourth Amendment and federal wiretap law.

### Fifth Amendment Miranda Claim

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court famously ruled that the government may not use a suspect's statements against him at trial if these statements were the result of custodial interrogation and if the police did not employ appropriate procedural safeguards to protect the Fifth Amendment privilege against self-incrimination (such as to administer warnings and to obtain a knowing, intelligent, and voluntary waiver of the suspect's rights to silence and to counsel). *See also Maryland v. Shatzer*, 559 U.S. 98, 103–04 (2010). Not every statement that a criminal suspect may make is subject to *Miranda* safeguards. Rather, *Miranda* applies only if a suspect has been subject to *custodial interrogation*, which requires at the outset dual inquiries into whether a suspect was "in custody" and, if so, whether he was subject to "interrogation." *See, e.g., Jackson v. Conway*, 763 F.3d 115, 136–37 (2d Cir. 2014).

Here, it is undisputed that defendants were in custody, and the parties debate only whether the defendants' statements in the police cars were the product of "interrogation" by the police. The Supreme Court has acknowledged that "interrogation" for *Miranda* purposes extends beyond "express questioning" to its "functional equivalent," such as "any words or actions on the

7

part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980) (footnote omitted); *Jackson*, 763 F.3d at 137 (same). In light of the purposes of *Miranda* to protect against coercive conduct, the Supreme Court has cautioned that, for conduct to amount to "interrogation," the conduct "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300.

In *Innis*, for example, the police arrested a murder suspect and placed him in the rear of a police vehicle to transport him back to the police station. Although the suspect was under arrest, the murder weapon—a sawed-off shotgun—had not been found. During the course of the suspect's ride in a police cruiser to the police station, the two officers in the front seat began talking about the fact that there was a school for handicapped children nearby and their concern that a little girl might hurt herself if she came across the missing murder weapon. *Id.* at 294–95. The suspect overheard this conversation and interrupted it to instruct the police where the shotgun could be found. *Id.* at 295. Although the officers' conduct surely led to the suspect's incriminating statement, the Court concluded that the officers' conduct did *not* amount to "interrogation" for lack of evidence that the officers knew the suspect to be "peculiarly susceptible to an appeal to his conscience" or "that the police knew that the [suspect] was unusually upset or disoriented at the time of his arrest." *Id.* at 302–03 (footnote omitted).

Defendants argue that the police tactics here—placing them in a police car in hopes that they might make incriminating statements—amounted to interrogation. Although the Second Circuit has yet to address this issue, defendant's argument runs contrary to decisions from two other federal appeals courts. *See, e.g.*, *Hernandez-Mendoza*, 600 F.3d at 977 (no *Miranda* violation when police officer left two defendants alone in his vehicle with a recording device

activated; police "may have expected that the two men would talk to each other if left alone, but an expectation of voluntary statements does not amount to deliberate elicitation of an incriminating response"); *Stanley v. Wainwright*, 604 F.2d 379, 382 (5th Cir. 1979) (no *Miranda* violation when police secretly recorded suspects in the back seat of a police car because *Miranda* "does not protect spontaneous utterances made by detainees mistakenly believing that they will not be overheard nor forbid police, under fifth amendment sanction, from setting snares"); *see also Fabian*, 2005 WL 2043008, at *3.

Defendants have done little to show that their statements were the product of anything other than the actions of law enforcement agents placing them in the police cars and hoping they would make incriminating statements. Nor, in the absence of evidence that the police staged anything they were doing outside the car in order to prompt defendants to react in a particular way, should interrogation be implied from the fact that defendants could see and hear to some extent what the agents were doing to secure the scene and their searches of the defendants' cars for incriminating evidence.[5] *See Acosta v. Artuz*, 575 F.3d 177, 191–92 (2d Cir. 2009) (noting that "courts have generally rejected claims . . . that disclosure of the results of a lineup or other inculpatory evidence possessed by the police, without more, constitutes 'interrogation' under *Innis*"); *United States v. Stroman*, 420 F. App'x. 100, 103 (2d Cir. 2011) (noting that the Second Circuit has not yet resolved whether, "under certain circumstances, showing evidence to the defendant may be the functional equivalent of custodial interrogation"); *United States v. Guido*, 704 F.2d 675, 677–78 (2d Cir. 1983) (noting that "other courts, in finding that a suspect validly

---

[5] During the latter stages of the defendants' time in the cars, the police engaged in additional conduct designed to provoke an incriminating response from the defendants. They had an officer briefly open one of the doors of each car as if for some innocent reason and then had another officer send an announcement that could be overheard by the defendants over the first officer's radio that a firearm had been found during the search of one of the defendants' cars. Because the government has stated that it does not intend to introduce any statements made by the defendants following this stratagem, I need not decide if this additional conduct amounts to interrogation.

waived his Fifth Amendment rights, have held that furnishing a suspect with details of the evidence against him after he has requested counsel does not constitute interrogation within the meaning of *Miranda*").

Even were I to conclude that the "interrogation" requirement were satisfied here, I would not conclude that the law enforcement agents' conduct amounted *en toto* to "custodial interrogation" for which *Miranda* warnings were required. That is because even if a suspect is both in custody and is subject to interrogation, this does not automatically mean that there has been the type of custodial interrogation for which *Miranda*'s protections are designed and required.

In *Illinois v. Perkins*, 496 U.S. 292 (1990), for example, the Supreme Court concluded that an undercover agent who posed as an inmate did not need to give *Miranda* warnings to another inmate before asking questions that could elicit incriminating responses. The Court reasoned that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*," because "[t]he essential ingredients of a 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate," and "[w]hen a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking." *Id.* at 296.

The same holds true for defendants while they were seated in the police cars shortly after their arrest. Except for occasional quick interruptions, no police were present in the cars to question or interact with them. The defendants spoke freely to themselves and one another. The fact that their words were recorded because of strategic police deception is irrelevant because "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns." *Id.* at 297.

10

**CONCLUSION**

For the foregoing reasons, defendants' motions (Docs. #32 & #75, joined by all defendants, Docs. #82, #83, #84, #86, #109) to suppress the recorded statements made while seated in the back of police cars at the scene of their arrest are DENIED.

It is so ordered.

Dated at Bridgeport this 17th day of November 2014.


/s/ _____
Jeffrey Alker Meyer
United States District Judge